Are we talking about July the 1st or July the 2nd? May it please the Court, Helen DeZuba on behalf of plaintiffs, and I submit, Your Honor, that that is the core material fact that plaintiffs have alleged was intentionally misrepresented by the defendants, which is the notice, in order to be timely and in order to compel the return of these debentures, in fact, had to be mailed on July 1. We have an affirmation... Well, now, I'm going to let you finish your answer, but I'm confused, because when they come back in their brief, they point out that the law that applies this day before, only if the language required of the notice is that it not be after a certain day or after 30 days in advance. And I didn't get anything on that question in your reply brief. So what's the law? July the 1st or July the 2nd? I believe that the law, as we've briefed it, is that it has to be mailed not less than 30 days, and under New York law, that would have to be July 1. Either way, Your Honor, plaintiff's complaint adequately alleges that as of July 3rd, this envelope was still in the hands of the bank, because plaintiffs have alleged in their complaint, and therefore it's to be taken as true... I thought the postal mark was July the 3rd. No, the defendants argued that that was a postal mark, but plaintiffs have alleged, and I think the evidence, if we got to the stage of presenting evidence, would be that that printing that says July 3rd, Brooklyn, New York, is in fact at the hands of a third-party mail handler, the one that does the mail sorting, and that that's an agent of the bank. We've made that allegation. What was the July the 2nd stamp? Wasn't that the machine in the trustee or whoever was sending this notice? Wasn't there an original July the 2nd stamp? And then I thought it was the postal mark of July the 3rd. That's not right? That is not right, Your Honor. We have alleged, and we have actually consulted, I won't say that, but we have affirmatively alleged that the July 3rd date was put there by an agent of the bank who was, in fact, doing the mail sorting, and that that's when the Brooklyn, New York indication was placed there. Ms. Azub, I might have missed that one. Can you direct me to what paragraph I might find that in your complaint? Absolutely, Your Honor. Try 58B. I will. Precisely. We've alleged, and I believe that evidence. I'm not sure that we all have it on the bench here. Excerpt of Record 17. The language in the complaint says, said notice envelope has printing over the postage meter stamp. And Judge Rievele, I believe the answer is that the postage, which is the July 2nd date, was, in fact, a postage meter. We're all familiar with postage meters. We've then alleged this printing says, quote, 7-3-02, Brooklyn, New York, end quote. This printing was placed on the envelope by the agent of the Bank of New York, who placed the barcode on the envelope, which entitled the bank to mail each notice by first-class mail using only 27 cents postage, rather than the normal 37 cents. So that's a sorting tool that enables the bank to get a discount on a bulk mailing. And I'll submit, Your Honor, that it's also alleged that the plaintiff, Mr. Cox, who is a retired attorney, in fact asked the bank to provide the Form 3600, which would have demonstrated clearly on what day this mailing took place, and the bank refused to provide that. And we've alleged that we did subsequently obtain several Form 3600s involving the bank and that there's evidence that might prove that, in fact, this was done on July 3rd. We know that no mailing could have occurred before July 2nd, because that's the only day that the postage, the meter, was actually placed there. So we've alleged, and, you know, it's interesting because unlike the previous case, this case is a direct case where you're talking about a relationship and a material misstatement about the core material fact. And it was made in order to induce these investors to believe that they had no choice but to surrender their debentures. So you don't have to get into the, you know, it's unlike many of the cases that the circuit has decided in the fraud on the market theory. And in that context, it's understandable that you're looking for very precise, very specific information. And you often have, as you had in the earlier case, volumes of information or public statements or disclosures. Here, it's a relatively simple transaction. But it is a transaction that the securities law prohibit, because it was a manipulation of the debenture holders, a manipulation of their belief that they had a choice or didn't have a choice about whether to redeem these debentures. And it was done knowingly and intentionally. And we've alleged very particularly why it is that the defendants, the Bank of New York, knew that what they were saying was false, knew that the representation that this is a timely mailing and this is sufficient to compel your surrender is, in fact, false. You've alleged then that the earliest, in fact, the notices could have been put in the mail was July the 3rd. Correct, Your Honor. I don't allege that. I stand corrected. And what have you alleged about whether or not the ones who made the releases knew that the people handling the mail had not done their job? Precisely, Your Honor. Our allegation is that Ms. Thomas, who is the person that the bank appointed to handle this $239 million redemption, knew by the end of the day on July 1 that she had not mailed these notices. And all of these terms are terms of art based on the language of the debenture. She knew that they had not been mailed because, as evidenced by the envelope that Mr. Cox retained, there was no postage on the envelope. And her sworn affidavit, which was created on July 1, uses the past tense. She said, I deposited in the mail postage prepaid in New Jersey. When, in fact, we know from the evidence that we've attached to the complaint very specific information that shows that on July 3rd these envelopes are still in Brooklyn, New York. So her obligation is, and her assertion, false sworn affidavit says, I mailed them postage prepaid in New Jersey. And, you know, I think it's interesting that the ‑‑ and I think this is perhaps where the trial court made its error in that the trial court assumes in its opinion and reaches the conclusion that Ms. Thomas is a low-level mailroom employee. And I submit that that's not our allegation. Our allegation is that she's a high-level enough person to be ‑‑ in fact, we've alleged that she's either the product ‑‑ I'm sorry, the customer representative or she's a member of the product specialist who had responsibility for this mailing. And she herself says that she's an employee of the corporate trust department. She doesn't say that she works in the mailroom. You allege that Cox returned the debentures in response to Ms. Thomas' allegation statement. Mr. ‑‑ he originally surrendered his debenture based on the notice because the notice implicitly says it's timely. It's dated July 1. And in matters like this, I submit it's appropriate for the court to recognize that people assume the date of the notice is the date of mailing. The other assertion in there, which of course is false, is that it's offered in compliance with Section 4.04 of the debenture, which in order for that statement to be true, the mailing would have to be timely, meaning it would have to be not less than 30 days.  To be the misrepresentation that caused the return of the debenture. Absolutely. Isn't that a problem? It misled. I don't believe so, Your Honor. And Judge King acknowledged in his opinion that this subsequent behavior by the defendants, the subsequent reliance on a false affidavit, even when faced with the envelope, the senior bank officials still continue to insist that it was mailed timely and that it was effective. So he, the judge acknowledged that that's, it is after the fact, but it has, and we've alleged that that was their effort to cover up what they knew to be the fraudulent act and the fraudulent statements. And we've also alleged that that was an omission, that there's an omission to disclose because in fact these debenture holders were led to believe that they had no choice. In securities, the protection of investors is all about choice. We want investors to be able to make wise decisions based on full information and accurate information. And here these debenture holders were misled intentionally by the bank. And you can imagine what went on in terms of at the end of the day on July 1 when the bank realizes that they've botched this job. They've been given the task by Viacom, and Viacom's board of directors had to meet to approve this redemption. And then they realize we missed the deadline. You can imagine, and I think the affidavit that's used later is evidence that they had every incentive to cover up their error. But it's not the error. It's not the missing the date that plaintiffs have alleged is the fraud. The fraud is to send the notice out anyway when you now know that it has a false statement. And I think that's what misled these debenture holders, and that is the specific act that's pled, I think, very particularly in this case. But you're suing Viacom. As a control person because, and actually at trial originally, and we've cited the transcript where the lawyer who represents both Bank of New York and Viacom admitted that if we have primary liability, we have secondary liability against Viacom as the control person because it's Viacom's board makes the decision and then delegates the task to the Bank of New York. And you've named both the bank and Viacom as defendants? We have, Your Honor. Unless the court has further questions, I'll reserve my rebuttal time. Thank you. May it please the Court. My name is Lori Baumann. I represent the FLEs, Viacom International, and the Bank of New York. The primary question, indeed the sole question in this case, is whether the plaintiffs have met the standards for pleading scienter under the Reform Act. The Ninth Circuit in Silicon Graphic said that plaintiffs must plead evidence supporting a strong inference that defendants acted with conscious misconduct or deliberate recklessness. And I think what was lacking in the argument that we heard from the plaintiffs is any evidence that at the end of the day, July 1st, anyone in authority at the Bank of New York realized that the mailing had not occurred. There's absolutely no evidence pleaded that anyone who understood the consequences of a delayed mailing knew that, in fact, the mailing was delayed. And I think that's the key flaw in the plaintiff's argument. Why is she doing an affidavit on the 1st of July? Well, I think it's appropriate to look at Judge King's opinion where he says it's possible that this affidavit was completed just in the ordinary course of the bank's business. In other words, as they went through their mailing process, these affidavits were routinely completed. He says there's no evidence that this affidavit was prepared later to cover up an error. Do I have a copy of the affidavit in the papers in front of me? Yes, it's an exhibit. If you took the record 28, it's exhibit 2 to the amended complaint. Oh. I'm clear I have it. So Judge King made the observation that there's absolutely no evidence to suggest that she signed that affidavit with an intent to mislead anyone. It's equally possible that she did place the mailing into the process at the Bank of New York, and for some reason it was held up. Surely there's no evidence that anyone who understood the implication of a late mailing had any knowledge of what occurred. Let me also say that when we speak about the affidavit, it's important to note that that affidavit was not sent with the notice of redemption. The notice of redemption is the one page that's exhibit 1 to the amended complaint. It simply says there is a redemption occurring on August 1st and instructing the holders where to mail the venture. It doesn't make any representation about the date of mailing, and it doesn't attach that affidavit suggesting how the mailing occurred. Judge King got the results in this case exactly right. He stated that it was possible and appropriate to dismiss the amended complaint without even reaching the issue of whether the redemption was in fact void. And without reaching the issue of whether the mailing in fact occurred late. He said plaintiffs had failed to plead scienter in four respects. First, there are no facts pleaded to show that Ms. Thomas was a high-level employee with knowledge of the legal implications or the legal requirements for mailing the debentures. Secondly, there are no facts pleaded to show that the Thomas affidavit was designed to cover up a late mailing. Third, there are no facts pleaded to show that the forms from the post office prove that the mailing occurred on July 3rd. In fact, the judge said the evidence remains unclear as to exactly when the mailing occurred. And fourth, he stated that there are no facts pleaded to show that the bank put the July 3rd stamp on the envelope. Based on these facts alone, it's appropriate to dismiss the amended complaint. Now, no facts pleaded to show, it's hard work figuring out exactly how we're supposed to apply this act because we're so accustomed to notice pleading. And we know for sure, both under the statute and under Silicon Graphics, that the plaintiff must plead with particularity and must plead scienter with particularity. What I'm trying to figure out is why is it not enough to show that the notices were mailed too late, or rather, I'm sorry to allege, that the notices were mailed too late, that the affidavit prepared by Ms. Thomas was prepared on the 1st, and to plead that she was in a position of responsibility who did this as part of her job, and that it is a strong inference from that that she knew at the time she signed that affidavit that in fact it had not gone out. Isn't that enough? Or if not, why is that not enough? Well, I'll agree with you. It is very difficult to apply the facts pleaded in this case to the typical template of a securities fraud case. I mean, there's an allegation in the complaint that she knew that her affidavit is false. And you're saying that there are not enough facts pled in the complaint to show why or how we know that it was false. I mean, the pleading that she knew was false is made. You're saying there are not enough facts in the pleading. I think the link that's missing is to tie any late mailing to anyone at the bank who had any reason to understand that that was a problem from the point of view of redeeming these debentures. And the analogy I'd like to draw is to the line of cases involving accounting procedures. And the latest case is the DSAM global versus altruist case, which we have cited. That's a case where an accounting firm audited a public company's financial statements and concluded that the financial statements complied with the generally accepted accounting principles and issued a statement to that effect. A year or so later, they went back and discovered that, in fact, those procedures had not been followed in preparing the financial statements. And as a result, the financial statements were incorrect. And the company had suffered a loss in the previous year rather than seeing profits. When the corrected statements came out, stock price dropped, and, of course, lawsuits followed. And in that case, there was a pleading that the accounting firm, when it first did the audit, had all the information before it necessary to conclude that the procedures had not been followed. The pleading said it should have been obvious to the accounting firm that there was error here. And they appear to have been. If you could go back to this case, I'm having trouble. She says, I caused to be mailed. She doesn't say, I'm mailed. She says, I caused to be mailed on the 1st. And she says, caused to be mailed in New Jersey. Yet we have a date, somehow, a stamp on there on the 3rd of July that says Brooklyn, which, if I recollect correctly, is the opposite direction from Manhattan, from New Jersey. And we have an allegation that this sworn statement by Ms. Thomas was used to cover up. What facts do we need in addition to what's being alleged here? I think we would require a couple of things. Here's what I think harms the plaintiff's case. It's the subsequent letter from an in-house lawyer describing the mailing process, saying we went through that mailing process. We don't have control over. Well, wait a minute. That gets into what's true or not. That doesn't get into allegation. What do we need? What do we need to allege? What do they need to allege in terms of facts that they have not alleged? They need to allege that Ms. Thomas knew when she put the envelopes into the outbox that they would not arrive in the mail within at least 30 days before the redemption date. In addition, they need to plead that she understood that the effect of that delay would be that it would void the debentures. And incidentally, that's a point that we do not concede as a matter of law. She also needed to have the intent or something very close to intent, which is deliberate recklessness, to mislead the investors. I'm now reading from the complaint. It comes pretty close, I think, to what you're saying that they needed to allege. On July 1, when she signed the sworn statement, Ms. Thomas used the past tense, deposited, even though she knew that the notices had not yet been mailed. She knew that the notices contained a material false statement. She knew that an effective redemption required them to be mailed, not later than. So they're saying deposited is already a sign that she knew. The false statement demonstrates her knowledge of the requirements and her intent to cover up. The only purpose for the sworn statement is to be used to be covered up. That's a pretty strong allegation. Well, I think the response is that there's not evidence pleaded that she actually knew it had gone into the mail. And that's what you really need to make this into a false statement. I mean, that's one of the things that you need. All we've got here is, hey, she should have figured it out. She should have known. Well, in this accounting case that I was describing to you, that wasn't enough. You needed something. You need to have a pleading that suggests actual knowledge, and not just that the information was available to you and you should have figured it out. There had to be knowledge and an intent to mislead, and we are lacking that in this case. Well, she says, let me push it a little bit, and I think I'm consistent with what's in the complaint. Her affidavit says, and were deposited to be mailed in New Jersey. Well, we know that's not true. That's to say that we know that's not, in fact, what happened. Here she is on the 1st of July telling us as a matter of past fact what happened, but we know if the allegations of the complaint are true, we know that's simply false. And she's saying it as a matter of past tense. This happened. They were deposited. But, in fact, on the 3rd of July, they were still in Brooklyn. They never made it to New Jersey. I'm not sure when they ever made it to New Jersey, but they hadn't made it by the 1st of July. That sounds like there's probably a good joke in there somewhere, never making it to New Jersey. The fact is that this affidavit, at the end of the day, was not seen by the holders when they were told to submit their debentures back to the Bank of New York. It was not seen by them. And so it was not relied on by the holders. Well, what was relied on was the mailing. And the allegation is that the mailing was false. And the purpose for the affidavit is to show, from your side, to show that, in fact, they complied, but from their side, to show that you knew that the statement on the debenture as the date of mailing was false. I understand that the affidavit was not included. I think this is the relevant point in that regard. The mailing may have been late. That may have been a breach of the debenture contract. But there is not a pleading of intent to raise this to the level of a securities fraud. In other words, performing a contract, failing to perform all the terms of the contract, is not a fraudulent statement that you have performed the terms. And I think that's the best thing you can say about this. But would it be a violation if, in response to an objection, you say, well, wait a minute, I'm not sure this was mailed on time. The bank says it was mailed on time. When, in fact, the bank knows full well that it was not. Now, I understand you want to contest the pleading. I think, in that case, you would have a breach of contract claim. But not a fraud claim? Not a securities fraud claim. Even if the bank says... The element was not misled. Let me make sure I understand. The person comes in and he says, listen, I don't think this was mailed on time. The bank says it was mailed on time. We know it was mailed on time. Is that at least an attempt to defraud? No, I would... Why not? First of all, of course, I would need to know who is making that representation. The bank, on behalf of Viacom. It says, we know it was mailed on time, when they know it was not. Is that an attempt to defraud? And this is after the holder has come back and said, we don't think... When the holder has come back and said, you know, I'm not sure I should be paying this because I'm not sure it was mailed on time. The bank says, we know it was. No, I would disagree because there has to be an intent to mislead. And I don't think that there is any indication here... If you can listen to me. I'm hypothesizing that the bank says in response to the inquiry, we know it was mailed on time when the bank knows that that statement is false. That sounds like an attempt to mislead. Is that an attempt to defraud? No. And the person who makes that statement knows that it causes... You have to assume that it causes the debenture redemption to be void. And again, we don't accept that. That is a matter of law. It is void as a result of being mailed late. So I think that the bank, at all times, believed that a redemption had occurred. It did not have any intent to defraud by saying, oh, in fact, you don't need to redeem, but we're telling you you have to. The belief at the bank was that a redemption was going to take place August 1st. They told the holders that redemption was going to occur. There was no intent to defraud in that connection because the bank believed... Even though the bank is lying. Even though the bank knows that the mailing occurred perhaps a day late. But the bank states it happened on the 1st. That sounds like a lie. You know, I will say this gets us a bit beyond the judge's opinion because the judge said we don't have proof of an intent. I understand that. So I think then you get to the next question, which is, is this a purchase or sale of a security? And that's outside of the issues before the court right now. I think you also do get into the question of materiality, which is what information would be useful to an average investor in making an investment decision. I think there's a pretty good argument there was no investment decision here. This was simply the termination of the contract. Is that question now in front of us? It is not. And, in fact, the issue in the district court's opinion was limited to CNTR. We would ask that the court pursue the line that Judge King did in this case. And if there are no further questions, we will ask the court to affirm. Thank you. You've saved a little time. May it please the court, I have just a couple of points I'd like to cover. The argument was made previously that there was, quote, no evidence, close quote, and I think it's important for us all to remember that we're here at the pleading stage. And in response to Well, there has to be allegations of evidence. Isn't that the key distinction? Correct. And in detail. And I submit that we have that. And specifically, a couple of the challenged items were that defense counsel suggested that we haven't alleged that Ms. Thomas was high level enough. In fact, at paragraph 24 of the complaint, which is in excerpt of record seven, we've alleged that she was a relationship manager and that she was responsible for this $239 million debenture. So I submit we've made that allegation. No, you say senior relationship manager. Senior relationship manager. And it was also stated that there was no allegation that the affidavit was used to cover up the transaction. In fact, that is contained at paragraph 26, excerpt of record page seven. And then as we discussed earlier, the allegation that on July 3rd these envelopes were still within the control of the bank, as I believe one of your Honor assisted me, that is at paragraph 58B of the complaint, excerpt of record 17. The only other point I'd like to add is in our discussion of Ms. Thomas and her affidavit, I think another key point of her affidavit that tells us that it's a false affidavit is it actually says that postage was prepaid. So if you take the affidavit, which the bank's legal counsel had in front of it that said it was deposited to be mailed in New Jersey, postage prepaid, and then the exhibit to the complaint, which is the envelope that shows that postage didn't even get on it until July 2nd, those are the allegations that plaintiffs are relying on to show the falsity of that statement. And this is different than many of the cases the court has had to decide because it's not a secondary market case. It's not talking about investors in the marketplace. This is a one-to-one relationship between the bank as trustee and the de ventureholders. And I submit... If you allege the number of pieces of mail that contained notices that were sent, do we have any idea from the complaint what the numbers are that are alleged to have been involved? I don't believe that that's in the complaint. It is in the complaint that the plaintiff himself obtained a couple of these form 3600s. Which indicated that it was in excess of 100,000 pieces of mail. It is a substantial number of mailings. So then I guess the question would be whether or not you could actually process that many in one day. And it's curious just on the face of the complaint why it is that the bank waited until July 1st. It could have been 60 days in advance. Because they could have done 60 days. But they didn't. And because they didn't and because they misled these de ventureholders into thinking that they had no choice but to surrender the de ventures, plaintiff's complaint should be reinstated and this case should be allowed to proceed. Thank you. So you win. Do you get this interest of 22 or can they do this over? They can do it over if they do it right. You don't get 8% all the way to 22? No, you're right. All right. They might file it up again. Who knows? Okay. Thank you. Both are a very useful argument on both sides. Thank you very much. The case of Cox v. Viacom International is now submitted for decision. The next case on the calendar is United Association Union Local 290 Plumber Steam Fitter v. Lennon. That one is number 35775. That's been submitted on the briefs. And then we've got a series of appeals. The first one of which is Chow v. Capital Consultant and Lennon. Well, you know all those cases. I'll just read off the case numbers for the record. 03-35409, 03-35406, 03-35412, and 03-35407. All of them arising out of the receivership of capital consultants and the distribution of the assets. Okay. Okay. When you're ready.
judges: Reavley , W. Fletcher, Tallman